UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SOURCE NETWORK SALES       )
MARKETING, LLC,                )
                                  )
         Plaintiff,          )         CIVIL ACTION NO.
                                  )
VS.                              )         3:14-CV-1108-G
                                  )
NINGBO DESA ELECTRICAL      )
MANUFACTURING CO., LTD.,     )
                                  )
        Defendant.         )

## MEMORANDUM OPINION AND ORDER

Before the court are the defendant's motions to dismiss the plaintiff's amended complaint for lack of personal jurisdiction and failure to state a claim for relief (docket entry 24) and the plaintiff's motion to strike aspects of the defendant's supporting affidavit (docket entry 28). For the reasons discussed below, the defendant's motions are denied and the plaintiff's motion is granted.

## I. BACKGROUND

### A. Factual Background

The present dispute arises out of a manufacturing agreement (the "agreement") the parties negotiated in April and May of 2010. Plaintiff's First Amended

Complaint ("Complaint") ¶ 13 (docket entry 22).  Under the agreement, the

defendant, Ningbo Desa Electrical Manufacturing Company, Ltd. ("Desa"), agreed to

manufacture heaters for the plaintiff, Source Network Sales & Marketing, LLC

("Source").  *Id.*  Desa "requested orders and payments for the Heaters to be sent

through China Ningbo Cixi Import and Export ('Cixi')" -- Desa's holding company --

"and informed Source that Cixi would also handle shipping the Heaters."  Appendix

to Plaintiff's Response to Defendant's Motion to Dismiss ("Plaintiff's Appendix")

(docket entry 27), Tab 1, Declaration of Mike Dolder ("Dolder Declaration") at App.

3, ¶ 10.  Although Source was not the manufacturer of the heaters, it was still

"responsible for all quality control and warranty issues."  Complaint ¶ 13.

         During the course of the parties' business relationship, Desa's representatives

had various contacts with Texas.  "In the spring of 2013, at Desa's request,

representatives of Desa . . . visited Source's offices in Plano, Texas."  Dolder

Declaration at App. 5, ¶ 16.  Of the more than 1,500,000 heaters Desa manufactured

for Source, "Approximately 115,000 heaters were shipped directly to Source in Texas,

and shipments were made on a weekly basis ten months out of every year, with at

least 168 total shipments sent directly to Texas."  *Id.* ¶ 15.  Desa sent replacement

parts to ABC Vacuum, an Austin, Texas-based company which repaired defective

heaters Source had sold.  Plaintiff's Appendix, Tab 3, Declaration of Ralph Baccus at

App. 54-55, ¶ 4; *see also* Dolder Declaration at App. 7, ¶ 22.  Moreover, throughout

the relationship, Desa communicated with Source's representatives in Texas to handle business issues.  Dolder Declaration at App. 5-6, ¶¶ 17, 20.

Frustrated by the increasing number of defective heaters Desa manufactured, Source terminated its relationship with Desa in January of 2014.  *Id.* at App. 6-7, ¶¶ 21-24; Complaint ¶ 16.  Subsequently, Source discovered that in 2011 Desa applied for and successfully registered LIFE SMART (the "mark") as a trademark in China.  Complaint ¶ 18; Dolder Declaration at App. 7-8, ¶ 25; Plaintiff's Appendix, Tab 1, Exhibit A ("Cease-and-Desist Letter") at App. 12 ("Ningbo Desa has obtained registration of the LIFE SMART trademark for electric heaters . . ..").  Prior to Desa's registration of the mark in China, Source had already registered the mark in the United States for hot tubs, spas, and saunas.  Complaint ¶ 8, Exhibit 1.

In 2014, Source filed an application to register the mark for additional products, including infrared heaters, in the United States.  *Id.* ¶ 8, Exhibit 2.  When the United States Patent & Trademark Office published the mark on February 25, 2014 for opposition, "Desa filed an application for a stylized mark 'Life Smart' that is identical" to a logo Source developed for the mark in 2011.[1]  *Id.* ¶ 19, Exhibit 6; *see also* Dolder Declaration at App. 8, ¶ 27.  After filing its application, Desa sent Source a letter on March 25, 2014 requesting that Source "immediately halt all global (1)

_____

[1]       As originally depicted, the logo featured the word "life" on top of the word "smart."  However, "In or around 2011, the Logo was also depicted with the word SMART to the right of the word LIFE rather than below."  Complaint ¶ 9.

manufacture, packaging, distribution, and sale of electric infrared heaters, and (2) use of the above-referenced LIFE SMART and similar trademarks." Cease-and-Desist Letter at App. 13; Complaint ¶ 21. The letter indicated that the Administration of Industry and Commerce in China had "taken steps to protect Ningbo Desa's Chinese intellectual property rights by raiding Source Network's new supplier and seizing infringing products." Cease-and-Desist Letter at App. 12.

Moreover, Desa sent emails to many of Source's customers, including BiMart, Home Depot, Walmart, KMS, Inc., and Lowes, Inc., claiming that Source was "infringing on Desa's trademarks" and offering to serve as an alternative supplier of Life Smart heaters. Dolder Declaration at App. 8-10, ¶¶ 29-33; Plaintiff's Appendix, Tab 1, Exhibits B, F-H. After the contractual relationship between Desa and Source ended, at least one United States company purchased heaters from Desa bearing the mark. Plaintiff's Appendix, Tab 2, Declaration of Keith Carpenter at App. 42-44, ¶¶ 2-4. Despite Desa's actions, "On July 14, 2014, Source Network also obtained a federal registration for the Mark . . . for infrared heaters and other products . . .." Complaint ¶ 8; Exhibit 2.

B. Procedural Background

Source filed its complaint with this court on March 28, 2014 asserting claims for trademark infringement, unfair competition, tortious interference, and declaratory judgment (docket entry 1). After Desa served a motion to dismiss (docket entry 14),

Source filed an amended complaint which added claims for breach of contract and breach of implied warranty of merchantability (docket entry 22). Desa responded again with a motion to dismiss, contending both that Source's amended complaint fails to state claims for tortious interference and breach of contract and that the court lacks personal jurisdiction over Desa with respect to all of Source's claims (docket entry 24). Source filed a timely response (docket entry 26) and a motion to strike certain statements contained in an affidavit supporting Desa's motion (docket entry 28). Desa failed to serve a reply. The motions are now ripe for consideration.

## II. <u>ANALYSIS</u>

### A. <u>Legal Principles</u>

#### 1. *Personal Jurisdiction under Texas and Federal Law*

##### a. General Discussion

A federal court may exercise personal jurisdiction over a nonresident defendant if "(1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution."[2] *Revell v. Lidov*, 317 F.3d 467,

---

[2]     With regard to claims arising under federal law, a district court generally has jurisdiction only over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." FED. R. CIV. P. 4(k)(1). However, if "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction," then the district court can "exercis[e] jurisdiction [when it] is consistent with the United States Constitution and laws." FED. R. CIV. P. 4(k)(2); see also *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 650-51 (5th Cir.), *cert.*

(continued...)

469 (5th Cir. 2002).  Thus, the court must first apply state law to analyze whether

Texas, the forum state, could assert long-arm jurisdiction.  *Pedelahore v. Astropark, Inc.*,

745 F.2d 346, 347 (5th Cir. 1984).  The Texas long-arm statute confers jurisdiction

to the furthest extent permissible under the federal constitution.  See *Access Telecom,*

*Inc. v. MCI Telecommunications Corporation*, 197 F.3d 694, 716 (5th Cir. 1999), *cert.*

*denied*, 531 U.S. 917 (2000); see also TEX. CIV. PRAC. & REM. CODE ANN. § 17.041 *et*

*seq.* (Texas long-arm statute).  Consequently, the court need only concern itself with

the federal due process inquiry.  See *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir.

1999); *Wilson v. Belin*, 20 F.3d 644, 647 n.1 (5th Cir.), *cert. denied*, 513 U.S. 930

(1994).

Due process requires the satisfaction of two elements to exercise personal

jurisdiction over a nonresident defendant:  (1) the nonresident must have sufficient

contacts with the forum, resulting from affirmative action on his part, such that the

nonresident defendant could anticipate being haled into the courts of the forum state;

and (2) it must be fair and reasonable to require the nonresident to defend himself in

the forum state.  See *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 474-78

(1985); *Gulf Consolidated Services, Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d 1071, 1073

(5th Cir.), *cert. denied*, 498 U.S. 900 (1990).  The Due Process Clause ensures that

persons have a "fair warning that a particular activity may subject [them] to the

---

[2](...continued)
*denied*, 543 U.S. 979 (2004).

jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)) (internal quotation marks omitted).

To establish minimum contacts with the forum, a nonresident defendant must do some act by which he "purposefully avails [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)) (internal quotation marks omitted).  The unilateral activity of one asserting a relationship with the nonresident defendant does not satisfy this requirement.  *Id.*; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984).  "Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show the assertion of jurisdiction would be unfair." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) (citation omitted).  In determining whether the exercise of jurisdiction is fair and reasonable under the Due Process Clause, "courts in appropriate cases may evaluate the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477 (internal quotations, alterations and citation omitted).

- 7 -

Two types of in personam jurisdiction may be exercised over a nonresident defendant -- specific jurisdiction and general jurisdiction.  Specific jurisdiction exists if the cause of action "arises from or relates to the defendant's contact with the forum state," and those contacts meet the due process standard.  *J.R. Stripling v. Jordan Production Company, LLC*, 234 F.3d 863, 871 (5th Cir. 2000) (quoting *Latshaw*, 167 F.3d at 211) (internal quotation marks omitted).  "In determining whether specific jurisdiction exists, the court must conduct the minimum contacts analysis separately for each cause of action."  *Eagle Metal Products, LLC v. Keymark Enterprises, LLC*, 651 F. Supp. 2d 577, 585 (N.D. Tex. 2009) (Lynn, J.) (citation omitted).  With regard to a corporation, general jurisdiction may be found when the nonresident is (1) incorporated in the forum state; (2) operates its principal place of business in the forum state; or (3) possesses contacts with the forum that are "so continuous and systematic as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, ___ U.S. ___, 134 S. Ct. 746, 754, 760 (2014) (internal quotations and citations omitted).

Under either a specific or general jurisdiction analysis, however, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate."  *Burger King*, 471 U.S. at 474 (quoting *International Shoe Company v. Washington*, 326 U.S. 310, 316 (1945)).  The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a

defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'"  *Id.* at 475(internal citations omitted).

b.  *Calder* Effects Jurisdiction

In *Calder v. Jones*, 465 U.S. 783, 784-86 (1984), the Supreme Court concluded that personal jurisdiction existed in the California Superior Court over a reporter and editor of a Florida-based national magazine with respect to libel claims brought by an actress.  An issue of the magazine, which sold approximately 600,000 copies in California, contained material that allegedly libeled the actress.  *Id.* at 785.  While researching the relevant article, the reporter called sources in California and even called the actress's residence on one occasion.  *Id.* at 785-86.  The editor, who also served as the president of the magazine, "ha[d] been to California only twice -- once, on a pleasure trip, prior to the publication of the article and once after to testify in an unrelated trial."  *Id.* at 786.  However, he did "review[ ] and approve[ ] the initial evaluation of the subject of the article and edited it in its final form.  He also declined to print a retraction requested by [the actress]."  *Id.*  These facts demonstrated that the defendants helped produce "an article that they knew would have a potentially devastating impact upon [the actress].  And they knew that the brunt of that injury would be felt by [the actress] in the State in which she lives and works and in which the [magazine] has its largest circulation."  *Id.* at 789-90.  Consequently, the

defendants "must reasonably anticipate being haled into court there to answer for the truth of the statements made in their article." *Id.* at 790 (internal quotations and citations omitted). Summarizing its reasoning, the Supreme Court noted that when a party is a "primary participant[ ] in an alleged wrongdoing intentionally directed at a [state's] resident, [then] jurisdiction over them [may be] proper on that basis." *Id.*

*Calder* indicated that when the effects of an intentional tort are clearly directed at a state, those effects support the exercise of personal jurisdiction over the tortfeasor in the target state. Although *Calder* concerned the tort of defamation, it is clear *Calder*'s "effects test" extends "outside the context of defamation." *Wien Air Alaska*, 195 F.3d at 212 (citation omitted). In *Guidry v. U.S. Tobacco Company, Inc.*, 188 F.3d 619, 629 (5th Cir. 1999) (citation omitted), the Fifth Circuit noted that "the effects of torts committed outside the forum state that cause death or serious physical harm may also serve as minimum contacts with the forum for purposes of personal jurisdiction." The test also logically applies to "intentional business torts," including tortious interference and intentional trademark infringement or dilution. *Isbell v. DM Records, Inc.*, No. 3:02-CV-1408-G, 2004 WL 1243153, at *10 (N.D. Tex. June 4, 2004) (Fish, Ch.J.) (compiling cases); see also *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 402 (5th Cir. 2009) (finding the application of the effects test to a tortious interference claim "particularly persuasive"); *Healix Infusion Therapy, Inc. v. Human Arc Corporation of Ohio*, Civil Action No. H-08-cv-3262, 2009 WL 7326369, at *7 n.2

(S.D. Tex. July 13, 2009) ("While the Fifth Circuit has not applied the effects test to resolve jurisdiction over trademark disputes, it has recognized that *Calder's* reasoning is applicable to intentional torts other than defamation, the claim at issue in [the] Supreme Court's opinion."); *Healix Infusion Therapy, Inc. v. Helix Health, LLC*, Civil Action No. H-08-0337, 2008 WL 1883546, at *6 (S.D. Tex. Apr. 25, 2008) ("[A] defendant that 'expressly aims' its trademark-diluting conduct at residents of a forum state can be said to have purposely directed its activities toward that forum, and should therefore reasonably anticipate being haled into court in that forum.") (citation omitted); *Licciardello v. Lovelady*, 544 F.3d 1280, 1287-88 (11th Cir. 2008) (applying the effects test to a trademark infringement claim); *Panavision International, L.P. v. Toeppen*, 141 F.3d 1316, 1321-22 (9th Cir. 1998) (same); *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1391 (8th Cir. 1991) (same).  These extensions represent other instances where defendants should "reasonably anticipate being haled into court" in a forum state "because of their *intentional* conduct in [another state or country] calculated to cause injury to" a party residing in the forum state. *Calder*, 465 U.S. at 789, 791 (emphasis added).

As this court has previously noted, the "effects test" establishes the minimum contacts necessary for personal jurisdiction when (1) a defendant committed an intentional tort or business tort; "(2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the resulting harm to

the plaintiff; and (3) the defendant expressly aimed his conduct at the forum, so that the forum can be said to be the focal point of the tortious activity." *Triple Diamond Energy Corporation v. Venture Research Institute, Inc.*, Civil Action No. 3:08-CV-0050-M, 2008 WL 2620352, at *4 (N.D. Tex. July 3, 2008) (Lynn, J.) (citation omitted).  By requiring that a defendant "expressly aim[ ] his conduct at the forum," *id.*, the third element ensures that a "[f]oreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts towards the forum." *Wien Air Alaska*, 195 F.3d at 212 (citation omitted).  In other words, "the plaintiff cannot be the only link between the defendant and the forum.  Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, __ U.S. __, 134 S. Ct. 1115, 1122 (2014) (citation omitted).  In certain cases, "[p]urposeful forum-directed activity -- even if only a single substantial act -- may permit the exercise of specific jurisdiction in an action arising from or related to such acts." *Ham v. La Cienega Music Company*, 4 F.3d 413, 415-16 (5th Cir. 1993) (citations omitted).

For example, in *SGS-Thomson Micro-Electronics, Inc. v. Ferris*, No. 93-9115, 1995 WL 313932, at *1 (5th Cir. May 1, 1995) (per curiam) (unpublished), *cert. denied*, 516 U.S. 922 (1995), the Fifth Circuit approved the district court's exercise of personal jurisdiction over a defendant who "sent a letter to [an electronics company] in 1989 alleging that [the company] was infringing [his] copyright by selling certain

'IC chips.'"  The Fifth Circuit endorsed the district court's reference to an opinion

from the Central District of California which "held that an alien defendant's

transmittal of a letter to the Plaintiff in the forum state threatening litigation for

patent infringement, and thereby threatening plaintiff's activities in the forum state,

was sufficient forum-related activity to satisfy due process requirements needed to

support specific jurisdiction."  *Id.* at *2 (citing *Dolco Packaging Corporation v. Creative*

*Industries, Inc.*, No. 86-3078 WMB (Bx), 1986 WL 84366 (C.D. Ca. Oct. 10, 1986)).

By sending the cease-and-desist letter, the defendant "initiated" and "purposefully

directed" conduct towards Texas that established the minimum contacts necessary for

personal jurisdiction.[3]  See *id.* at *3.

---

[3]      Desa cites *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir.), *cert.*
*denied*, 555 U.S. 816 (2008), for the proposition that sending a cease-and-desist letter
to a state does not establish personal jurisdiction over the sender in that state.
Defendant's Renewed Motions to Dismiss, and Brief in Support, for Lack of Personal
Jurisdiction and Failure to State a Claim ("Defendant's Brief") at 7 (docket entry 24).
The defendant in *Stroman*, the Commissioner of the Arizona Department of Real
Estate (the "commissioner"), sent two cease-and-desist letters to a Texas-based real
estate company "stating that [the company's] agents were not licensed as real estate
brokers or salespeople in Arizona."  *Id.* at 480-81.  The company brought an action
against the commissioner under 42 U.S.C. § 1983 "alleging that Arizona's attempted
exercise of regulatory jurisdiction to license timeshare resales violates the Commerce
Clause . . . ."  *Id.* at 481.  The Fifth Circuit concluded that the district court lacked
personal jurisdiction over the commissioner.  *Id.* at 489.

        However, the court's discussion in *Stroman* indicates the case's limits as
precedent.  "Courts generally exercise specific jurisdiction over nonresident
defendants that are engaged in *commercial, profit-oriented enterprise*."  *Id.* at 485
(emphasis added).  The commissioner, in contrast, was not trying "to obtain a
commercial benefit by acting in a governmental capacity to enforce Arizona law."  *Id.*

(continued...)

In reaching this conclusion, the Fifth Circuit cited *Brown v. Flowers Industries, Inc.*, 688 F.2d 328 (5th Cir. 1982), *cert. denied*, 460 U.S.1023 (1983), an opinion preceding *Calder* but consistent with its principles.  The *Brown* court concluded that the due process clause authorized the exercise of personal jurisdiction over an Indiana businessman whose only relevant contact with Mississippi was an allegedly defamatory telephone call he made to a corporation located in Mississippi.  *Id.* at 333-34.  In the court's words, the businessman "initiated the telephone call and allegedly committed an intentional tort.  The injurious effect of the tort, if one was committed, fell in Mississippi, which the defendant could easily have foreseen."  *Id.* at 334.

Similarly, in *Athletic Training Innovations, LLC v. L.A. Gear, Inc.*, Civil Action No. 10-1524, 2010 WL 4103309, at *5 (E.D. La. Oct. 18, 2010), the court concluded it possessed personal jurisdiction over a shoe company with respect to a tortious interference claim because the shoe company "specifically sent a cease-and-desist letter to the Plaintiff in Louisiana . . . ."  With this Louisiana contact in place,

---

[3](...continued)
"Because no such benefit accrue[d] to the Commissioner from her activities relating to Texas," the court concluded that "any jurisdiction based upon her having caused an 'effect' in Texas [was] likewise misplaced."  *Id.*  Moreover, the "[i]mportant questions of federalism . . . present" in *Stroman* are entirely absent from the present case.  *Id.* at 488 (noting that allowing "a federal district court in the Southern District of Texas [to exercise] personal jurisdiction over a nonresident state official would create an avenue for challenging the validity of one state's laws in courts located in another state").

the court relied on the effects produced by additional cease-and-desist letters the shoe company sent to the plaintiff's out-of-state customers to establish jurisdiction under *Calder*. *Id.* at *3-6.  These latter cease-and-desist letters "were designed to prevent Plaintiff from retaining customers," and given the shoe company's knowledge of the plaintiff's home state, "they were 'purposefully directed' towards a Louisiana resident." *Id.* at *5.

c.  Rule 12(b)(2)

When a nonresident defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Wilson*, 20 F.3d at 648 (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)) (internal quotation marks omitted); see also *Gardemal v. Westin Hotel Company*, 186 F.3d 588, 592 (5th Cir. 1999).  Once the plaintiff establishes minimum contacts between the defendant and the forum, "the burden shifts to the defendant to show the assertion of jurisdiction would be unfair." *Wien Air Alaska*, 195 F.3d at 215 (citation omitted); see also *Eagle Metal Products*, 651 F. Supp. 2d at 587 ("Since [the defendant] does not even claim the absence of fair play and substantial justice, . . . if minimum contacts exist, jurisdiction may be exercised.") "The court may determine the jurisdictional issue by receiving affidavits,

interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart,* 772 F.2d at 1192.

In its consideration of the motion, the court will take the allegations of the complaint as true, except where they are controverted by opposing affidavits, and all conflicts in the facts are resolved in favor of the plaintiff. *Wilson,* 20 F.3d at 648; *Gardemal,* 186 F.3d at 592. If the court decides not to have an evidentiary hearing on the jurisdictional issue, then to defeat the motion the plaintiff is required to present a *prima facie* case for personal jurisdiction, rather than proving the issue by a preponderance of the evidence. *King v. Hawgwild Air, LLC*, Civil Action No. 3:08-CV-0153-L, 2008 WL 2620099, at *1 (N.D. Tex. June 27, 2008) (Lindsay, J.).

### 2. *Rule 12(b)(6) Standard*

"In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief

requires more than labels and conclusions, and a formulaic recitation of the elements

of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation

marks, brackets, and citation omitted).  "Factual allegations must be enough to raise a

right to relief above the speculative level, on the assumption that all the allegations in

the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at

205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).  "The

court accepts all well-pleaded facts as true, viewing them in the light most favorable

to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area

Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks

omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine

whether a complaint fails to state a claim under Rule 12(b)(6).  See *Ashcroft v. Iqbal*,

556 U.S. 662, 678-79 (2009).  The court must "begin by identifying the pleadings

that, because they are no more than conclusions, are not entitled to the assumption

of truth."  *Id.* at 679.  The court should then assume the veracity of any well-pleaded

allegations and "determine whether they plausibly give rise to an entitlement of

relief."  *Id.*  The plausibility principle does not convert the Rule 8(a)(2) notice

pleading standard to a "probability requirement," but "a sheer possibility that a

defendant has acted unlawfully" will not defeat a motion to dismiss.  *Id.* at 678.  The

plaintiff must "plead[ ] factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (quoting FED. R. CIV. P. 8(a)(2)). The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiffs' allegations "nudge" their claims against the defendant "across the line from conceivable to plausible." See *id.* at 679, 683.

### 3.   *The Noerr-Pennington Doctrine*

The *Noerr-Pennington* "doctrine allows individuals or businesses to petition the government, free of the threat of antitrust liability, for action that may have anticompetitive consequences. *Noerr-Pennington* protection is grounded on the theory that the right to petition guaranteed by the First Amendment extends to petitions for selfish, even anticompetitive ends." *Greenwood Utilities Commission v. Mississippi Power Company*, 751 F.2d 1484, 1497 (5th Cir. 1985).  In *California Motor Transport Company v. Trucking Unlimited*, 404 U.S. 508, 510 (1972), the Supreme Court stressed that the *Noerr-Pennington* doctrine's protection of the right to petition "extends to all departments of the Government."

"Although the *Noerr-Pennington* doctrine initially arose in the antitrust field, [it now also] protect[s] first amendment petitioning of the government from claims

brought under federal and state laws . . ..” *Video International Production, Inc. v. Warner-Amex Cable Communications, Inc.*, 858 F.2d 1075, 1084 (5th Cir. 1988), *cert. denied*, 490 U.S. 1047 (1989).  For example, the doctrine “can apply to trademark owners’ attempts to protect their intellectual property rights.”  *GoForIt Entertainment, LLC v. DigiMedia.com L.P.*, 750 F. Supp. 2d 712, 742 (N.D. Tex. 2010) (Fitzwater, Ch.J.); see also *Video International Production*, 858 F.2d at 1084 (noting that the *Noerr-Pennington* doctrine extends to tortious interference claims).

With regard to petitioning the judicial branch (*i.e.*, filing a lawsuit), the *Noerr-Pennington* doctrine extends to threats to litigate, such as cease-and-desist letters, even though such actions do not entail petitioning the government.  *Coastal States Marketing, Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983); *Select Comfort Corporation v. Sleep Better Store, LLC*, 838 F. Supp. 2d 889, 896-900 (D. Minn. 2012) (concluding that “the *Noerr-Pennington* doctrine immunizes pre-suit demand letters . . .”).  The Fifth Circuit justified extending the doctrine to pre-suit activities as follows:

> Given that petitioning immunity protects joint litigation, it would be absurd to hold that it does not protect those acts reasonably and normally attendant upon effective litigation.  The litigator should not be protected only when he strikes without warning.  If litigation is in good faith, a token of that sincerity is a warning that it will be commenced and a possible effort to compromise the dispute.

*Coastal States Marketing*, 694 F.2d at 1367; see also *Select Comfort Corporation*, 838

F. Supp. 2d at 896 ("Because the right to petition means more than simply the right

to communicate directly with the government, protection under the doctrine

necessarily includes those activities reasonably and normally attendant to effective

petitioning.") (internal quotations, alteration and citation omitted).

A defendant should raise the *Noerr-Pennington* doctrine as an affirmative

defense. *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 860 (5th Cir. 2000), *cert. denied*,

532 U.S. 905 (2001); *Acoustic Systems, Inc. v. Wenger Corporation*, 207 F.3d 287, 295

(5th Cir. 2000) ("Although the *Noerr-Pennington* doctrine is frequently referred to as

an 'antitrust immunity,' it provides only a defense to liability, not an immunity from

suit.") (citations omitted).  As with other affirmative defenses, when the *Noerr-*

*Pennington* defense "appears on the face of the pleadings, dismissal under Rule

12(b)(6) may be appropriate." *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d

717, 726 (5th Cir. 2013) (internal quotations and citation omitted); *Love Terminal*

*Partners, L.P. v. City of Dallas, Texas*, 527 F. Supp. 2d 538, 550 (N.D. Tex. 2007)

(Fitzwater, J.) (noting that a court can dismiss an action under Rule 12(b)(6) if "it is

apparent from the face of plaintiffs' complaint that defendants are entitled to *Noerr-*

*Pennington* immunity . . .").

From the outset, however, the Supreme Court indicated that "[t]here may be

situations in which [petitioning activity] ostensibly directed toward influencing

government action, is a mere sham to cover what" would be, in the absence of *Noerr-Pennington* immunity, an illegal activity. *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961).  Individuals engaging in such activity are abusing, rather than effectively using, their First Amendment right to petition.  Consequently, the "sham" exception removes *Noerr-Pennington* immunity "when one party has begun litigation not to win that litigation, but rather to force its competitor to waste time and money in defending itself."  *Video International Production*, 858 F.2d at 1082.

### 4.  *Elements of a Breach of Contract Claim*

The parties agree that to succeed on a breach of contract claim under Texas law a plaintiff must prove "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."[4] *Beauty Manufacturing Solutions Corporation v. Ashland, Inc.*, 848 F. Supp. 2d 663, 667 (N.D. Tex. 2012) (Fish, J.) (quoting *Mullins*, 564 F.3d at 418); *see also* Defendant's Brief at 15 n.4; Plaintiff's Response to Defendant's Motion to Dismiss ("Response") at 23 (docket entry 26).

---

[4]      When this case is litigated on the merits, it might be advisable for the parties to research whether the United Nations Convention on Contracts for the International Sale of Goods governs their contract.  United Nations Convention on Contracts for the International Sale of Goods, *adopted on* Apr. 11, 1980, 52 Fed. Reg. 6262-6280, 1489 U.N.T.S. 3.

B. <u>Application</u>

1. *The Court Sustains Source's Motion to Strike Evidence*

Paragraphs five and six of Zhongda Chen's declaration are inadmissible

evidence.[5]  *See* Declaration of Mr. Zhongda Chen in Support of Defendant's Motion

to Dismiss for Lack of Personal Jurisdiction ("Chen Declaration") ¶¶ 5-6 (docket

entry 15); Plaintiff's Motion to Strike Inadmissible Statements in the Chen

Declaration ("Motion to Strike") (docket entry 28).   Chen is "familiar with Ningbo

Desa's past and present corporate structure and operations" in his role as vice

president of the company.   Chen Declaration ¶ 2.   However, he fails to explain how

he possesses knowledge regarding the business interactions between Source and Cixi,

the latter being the company Chen claims directly sold the heaters to Source.   *See*

Chen Declaration ¶¶ 5-6 (relying on nonspecific phrases such as "it is my

understanding" and "in researching the facts").   Without additional context, his

statements are mere self-serving allegations "based on conjecture or speculation."

*Kariuki v. Tarango*, 709 F.3d 495, 507 (5th Cir. 2013) (internal quotations and

citation omitted).   Because the statements are "not significant or probative evidence,"

*id.* (internal quotations and citation omitted), they are inadmissible.   See *Thompson v.

Chambers*, 804 F. Supp. 188, 191 (D. Kan. 1992) ("[T]o be sufficient to put the

contested facts in issue, affidavits submitted in support of or in opposition to motions

---

[5]      Desa resubmitted the Chen affidavit which it filed to support its earlier
motion to dismiss for lack of personal jurisdiction.   Defendant's Brief at 1 n.1.

to dismiss for lack of jurisdiction must comply with the requirements of FED. R. CIV. P. 56[(c)(4)]; *i.e.*, they must be made on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein."); FED. R. EVID. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Evidence to prove personal knowledge may consist of the witness's own testimony.").

The purchase order attached to the Chen declaration suffers from similar evidentiary flaws.  *See* Chen Declaration, Exhibit A.  According to Chen, the document reflects a sale between Cixi and Source.  Chen Declaration ¶ 6.  However, Chen "must produce evidence sufficient to support a finding that the item is what [he] claims it is." FED. R. EVID. 901(a).  It is unclear how, as the vice president of Desa, Chen would have access to a purchase order between Source and Cixi.  The failure "to include any basis whatsoever for authenticating the purchase order" makes it inadmissible.  Motion to Strike at 3.  Moreover, at trial, the purchase order would be inadmissible hearsay.  Desa attempts to use the purchase order to prove that Cixi sold the heaters directly to Source.  In other words, Desa attempts to "prove the truth of the matter[s] asserted" in the document.  FED. R. EVID. 801(c)(2).  Without additional information bringing the purchase order within one of the hearsay exceptions, *see* FED. R. EVID. 803-04, the document is inadmissible.

- 23 -

2. *Personal Jurisdiction Analysis*

In the brief supporting its motion to dismiss, Desa fails to address why the exercise of personal jurisdiction with respect to any claims would be unfair and unreasonable.  *See* Defendant's Brief at 1-12.  Therefore, if minimum contacts exist with respect to a specific claim, the court can exercise jurisdiction over Desa.  See *Wien Air Alaska*, 195 F.3d at 215.

a. Source Established a *Prima Facie* Case for
Specific Personal Jurisdiction Over Desa
With Respect to the Contract Claims

Desa had many contacts with Texas during the life of the contract.[6]  Gavin Lao -- a managing director for Desa – "sent numerous emails [to Source representatives] agreeing to certain specification changes for the Heaters and also provided information and edits for the user's manual for the Heaters."  Dolder Declaration ¶¶ 4, 9.  "In the spring of 2013, at Desa's request, representatives of Desa . . ., including Mr. Lao and an individual who was held out to be the Desa plant manager, Zheng Guohai, visited Source's office in Plano, Texas."  *Id.* ¶ 16; *see also* Plaintiff's Appendix,

---

[6]    Desa argues that "the Chen declaration establishes that there never *was* a contract between Source Network and Ningbo Desa."  Defendant's Brief at 9 (emphasis in original).  As discussed above, the portions of the Chen declaration supporting Desa's argument, as well as the purchase order, are inadmissible.  See *supra* at 22-23.  Even if the evidence were admissible, Source presents enough conflicting evidence to establish a *prima facie* case for personal jurisdiction. See, *e.g.*, Cease-and-Desist Letter at App. 11 ("We are informed that Source Network recently terminated its business relationship *with Ningbo Desa* and commenced working with a new Chinese supplier in the manufacture and packaging of the heaters.") (emphasis added).

- 24 -

Tab 1, Exhibits C-D.  Desa also shipped "[a]pproximately 115,000 heaters . . .

directly to Source in Texas" during the life of the contract.  Dolder Declaration ¶ 15.

These contacts establish specific personal jurisdiction over Desa with respect to

the breach of contract and breach of implied warranty of merchantability claims.  The

contacts furthered the contractual relationship between the parties and thus "relate[ ]

to" the contract-based claims.  *J.R. Stripling*, 234 F.3d at 871.  Moreover, given the

multitude of contacts, Desa "could anticipate being haled into court" in Texas.  *Burger*

*King*, 471 U.S. at 474.

> b.  Source Established a *Prima Facie* Case for Specific Personal
> Jurisdiction Over Desa With Respect to the Trademark
> Infringement, Unfair Competition, Tortious Interference,
> and Declaratory Judgment Claims[7]

Desa's conduct satisfies the three elements of *Calder's* "effects test" and thus

establishes minimum contacts with Texas.  See *supra* at 9-15.  Source alleges that

Desa committed the business torts of trademark infringement under both Texas

common law and the Lanham Act, unfair competition under the Lanham Act, and

tortious interference under Texas law.  Complaint ¶¶ 24-30.  As a Texas-based

company, Source experienced all of the harm resulting from the alleged wrongful acts

---

[7]    Although Source only applied *Calder's* effects test to the tortious
interference claim, the reasoning in its brief applies equally to its trademark
infringement, unfair competition, and declaratory judgment claims.  Additionally,
given the discussion below, the court does not need to determine whether Desa
possesses sufficient contacts with the United States as a whole to authorize the
exercise of jurisdiction under Federal Rule of Civil Procedure 4(k)(2).

in Texas.  Finally, as in *SGS-Thomson*, 1995 WL 313932, at *1-3, and *Athletic Training*

*Innovations*, 2010 WL 4103309, at *3-7, Desa's email to Source containing the cease-

and-desist letter "relates to" the trademark, unfair competition, and tortious

interference claims and constitutes "[p]urposeful forum-directed activity" that

establishes minimum contacts to "permit the exercise of specific jurisdiction . . .."[8]

*Ham*, 4 F.3d at 415-16.

Source also requests a declaratory judgment that it is the "true owner of the

Mark and Logo, Desa is not the owner of the Mark or Logo and does not have the

right to sell goods or services under the Mark or Logo, and that Source Network has

not infringed any purported rights of Desa."  Complaint ¶ 33.  This declaratory

judgment action is an alternative remedy to address the same underlying conduct

relevant to the unfair competition and trademark claims above.  Thus, the contacts

that established personal jurisdiction for these other claims are also sufficient for the

declaratory judgment claim.

---

[8]     The letter states that Desa will "take legal action as necessary in the
relevant territories to protect its own intellectual property rights."  Cease-and-Desist
Letter at App. 12.  This letter is one of the main reasons why Source filed the
trademark infringement and unfair competition claims.  As for the tortious
interference claim, the cease-and-desist letter establishes a Texas contact and the
emails Desa sent to Source's customers qualify as acts that "were 'purposefully
directed' towards a [Texas] resident."  *Athletic Training Innovations*, 2010 WL
4103309 at *5; Dolder Declaration at App. 8-10, ¶¶ 29-33; Plaintiff's Appendix, Tab
1, Exhibits B, F-H.

3.  *Noerr-Pennington Immunity Does Not Support*
*Dismissing the Tortious Interference Claim*

*Noerr-Pennington* authorizes dismissal through a Rule 12(b)(6) motion only

when its applicability "appears on the face of the pleadings . . .."  *Miller*, 726 F.3d at

726.  The complaint alleges that:

> Desa willfully and intentionally interfered with one or
> more of [Source's contractual] relationships by providing
> *false* information to one or more of these customers of
> Source Network, including but not limited to claiming that
> *it is the rightful owner of the Mark and Logo* and offering to
> provide heaters under the Mark and Logo in place of
> Source Network.

Complaint ¶ 30.  If Desa knew that Source possessed the rights to the trademark and

logo, then it contacted Desa's customers not to exercise valid rights, "but rather to

force its competitor to waste time and money in defending itself."  *Video International*

*Production*, 858 F.2d at 1082.  Thus, based solely on the "face of the pleadings," the

"sham" exception renders *Noerr-Pennington* immunity inapplicable.  *Miller*, 726 F.3d at

726.

4.  *Source States a Valid Claim for Breach of Contract*

The complaint sufficiently pleads the four elements necessary for a breach of

contract claim.  According to the complaint, after negotiations in 2010, the parties

"entered into an agreement . . . for [Desa] to become one of Source Network's

manufacturers of heaters . . ..".[9]  Complaint ¶ 13.  Initially, both parties performed under the contract (*i.e.*, Desa manufactured heaters for Source and Source paid Desa).  See *id.* ¶15.  However, the complaint alleges that in 2013 Desa breached the contract by manufacturing an increasing number of defective heaters.  *Id.* ¶ 16.  As a result of the breach, "Source Network received many complaints and returns of defective heaters from unsatisfied customers in Texas and elsewhere . . .."  *Id.*  Source alleges that damages stemming from this breach include "existing returns from end consumers, future returns from end consumers, loss of business and loss of goodwill in the marketplace."  *Id.* ¶ 17.  The court concludes that these allegations are "enough to raise a right to relief above the speculative level . . .."  *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).

## III.  CONCLUSION

For the reasons discussed above, Desa's motions to dismiss are **DENIED** and Source's motion to strike is **GRANTED**.

---

[9]      Even if paragraphs five and six of the Chen declaration were admissible and the court consequently presumed that Source's contractual counterparty were Cixi, the court would still deny the motion to dismiss.  Source's evidence that "Cixi ... is a holding company for Desa" would require discovery regarding the corporate relationship between the two corporations before the court would dismiss the claim against Desa.  Dolder Declaration at App. 3, ¶ 10.

**SO ORDERED**.

May 15, 2015.

_____

A. JOE FISH
**Senior United States District Judge**